# 16-2869-CV

## United States Court of Appeals
### *for the*
## Second Circuit

JOHN VOLPE, individually and on behalf of others similarly situated,

*Plaintiff-Appellant,*

— v. —

AMERICAN LANGUAGE COMMUNICATION CENTER, INC.,
DBA American Language Communication Center, JEAN PACHTER,
PETER PACHTER,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

ANDREW M. SPURCHISE
SEAN A. MALLEY
LITTLER MENDELSON P.C.
*Attorneys for Defendants-Appellees*
900 Third Avenue
New York, New York 10022
(212) 583-9600

## STATEMENT PURSUANT TO FEDERAL RULE
## OF APPELLATE PROCEDURE 26.1

Defendant-Appellee American Language Communication Center, Inc. (d/b/a American Language Communication Center) ("ALCC") has no parent corporation. Additionally, there is no publicly-held corporation that owns 10% or more of ALCC's stock.

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF THE CASE ............................................................ 1

SUMMARY OF THE ARGUMENT ................................................... 3

STANDARD OF REVIEW ................................................................ 5

ARGUMENT ................................................................................... 5

I.  APPELLEE IS EXEMPT UNDER THE FLSA BECAUSE
    HE WAS A TEACHER EMPLOYED BY AN EDUCATIONAL
    ESTABLISHMENT .................................................................. 5

    A.  The Terms "Educational Establishment" and "Other
        Educational Institution" are Construed Broadly ............... 6

    B.  Defendant is an "Other Educational Institution" Within the
        Meaning of 29 C.F.R. § 541.204(b) ................................ 11

        1.  ALCC is licensed by the New York State Education
            Department .......................................................... 13

        2.  ALCC is accredited by an accrediting body recognized
            by the U.S. Department of Education ....................... 14

        3.  Appellant was a "teacher." ..................................... 14

        4.  ALCC teachers are required to have a bachelor's degree
            and training or experience as an ESL teacher ........... 15

        5.  ALCC offers formal instructional courses in a classroom
            setting ................................................................ 17

        6.  ALCC issues certificates to its students ................... 18

        7.  ALCC's stated mission is to provide quality English
            language instruction .............................................. 19

        8.  Appellant was involved in organizing, communicating,
            and delivering ALCC's curriculum .......................... 20

    C.  ALCC Is An "Educational Establishment" Because It Is A
        Licensed And Accredited Post-Secondary Career Program ......... 21

CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................5

*Astor v. United States*,
  79 Fed. Cl. 303 (2007) ........................................................7, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................5

*Bretton v. Compass Career Mgmt. LLC*,
  No. 13-633, 2015 WL 349270 (E.D.La. Jan 26, 2015) ...............13, 22

*Chen v. Major League Baseball Properties, Inc.*,
  798 F.3d 72 (2d Cir. 2015) ........................................................5

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F.Supp.2d 173 (S.D.N.Y.2006) ..............................................15

*Escobedo v. Construction Laborers' Educ., Training and Apprenticeship Fund*,
  No. 11–3653 (ADM), 2012 WL 4838880 (D. Minn. Oct. 11, 2012) .............6, 12

*Fernandez v. Zoni Language Centers, Inc.*,
  No. 15-CV-6066 (PKC), 2016 WL 2903274 (S.D.N.Y. May 18, 2016) ....passim

*Franklin v. Breton Intern., Inc.*,
  No. 06 Civ. 4877(DLC), 2006 WL 3591949
  (S.D.N.Y. Dec. 11, 2006) ................................................6, 8, 13, 22

*Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't*,
  No. B–92–1066, 1996 WL 1187049 (D. Md. Oct. 30, 1996) ...........................9

*Gonzales v. New England Tractor Trailer Training Sch.*,
  932 F.Supp. 697 (D.Md.1996) ..............................................7, 13, 22

*Muller v. Amer. Mgmt. Ass'n Int'l*,
  368 F.Supp.2d 1166 (D.Kan.2004) ......................................................7

iii

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F.Supp.3d 156, 167 (S.D.N.Y.2015) .........................................................15

*Wilks v. D.C.*,
   721 F. Supp. 1383 (D.D.C. 1989).............................................................6, 7, 18

**STATUTES**

29 U.S.C. § 201 ...........................................................................................................1

29 U.S.C. § 213 ...........................................................................................................5

Fair Labor Standards Act of 1938..................................................................passim

New York Labor Law § 190. ..................................................................................1, 2

**OTHER AUTHORITIES**

29 C.F.R. § 541.204 ..........................................................................................passim

29 C.F.R. § 541.303 .........................................................................................3, 6, 9

8 NYCRR § 126.10............................................................................................*passim*

8 NYCRR §126.19 ........................................................................................15, 16

ALCC, *ESL Courses in New York City*,
   http://www.learnenglish.com/courses.htm (last visited November 11,
   2016) ..........................................................................................................17

ALCC, *Home*, http://www.learnenglish.com/ (last visited November 11,
   2016) ..........................................................................................................19

ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers.htm (last
   visited November 11, 2016)...............................................................................17

ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers (last
   visited November 11, 2016)...............................................................................15

Department of Labor Field Operations Handbook, § 22d06 (Rev. 661).............9, 18

Fed. R. Civ. P. 12(b)(6).............................................................................................2, 5

iv

POPULATION DIVISION, U.S. CENSUS BUREAU, *How Does Ability To Speak English Affect Earnings?* (2005) ........................................................................19

Wage and Hour Opinion Letter, 2006 WL 3406601 at * 2 ...................................13

Wage and Hour Opinion Letter, 2008 WL 4906284 at *2 ...................................13

Wage and Hour Opinion Letter FLSA 2005-38 (U.S. Dep't of Labor Oct. 13, 2005) ...................................................................9

## STATEMENT OF THE ISSUE

Whether the lower court correctly concluded that Defendant-Appellee American Language Communication Center, Inc. (d/b/a American Language Communication Center) ("ALCC"), a school for English as a Second Language, is an "educational establishment" under 29 C.F.R. § 541.204(b), and therefore that Plaintiff-Appellant is exempted from the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938 ("FLSA").

## STATEMENT OF THE CASE

Defendant-Appellee ALCC is a school in Manhattan which offers English as a Second Language ("ESL") classes to both local and international students. Defendants-Appellees Jean and Peter Pachter are alleged to be ALCC's owners and/or operators. (A-31 - A-48, ¶¶ 3-5, 14, 20.)

Plaintiff-Appellant, John Volpe ("Appellant"), was previously employed by ALCC as an ESL teacher. During his employment, he taught ESL classes, prepared lessons and quizzes, and administered and corrected student exams. (A-31 - A-48, ¶¶ 5, 35, 38, 41, 43, 45-46, 52.)[1] Appellant filed the action below alleging unpaid wages pursuant to the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the New York Labor Law, §§ 190, *et seq*. ("NYLL"). He also asserted derivative

---

[1] References to the Joint Appendix are referred to as "A-[page number]."

claims for alleged violations of the recordkeeping, wage-statement, and wage-notice provisions of the NYLL. (A-31 - A-48.)

ALCC is licensed by the New York State Board of Education (A-50) and accredited by the Commission on English Language Accreditation (A-52), which is recognized by the U.S. Department of Education as an approved national accrediting organization (A-54). The school's stated mission is to "provide quality English language instruction through a variety of courses to international and local students in a professional and supportive atmosphere utilizing our unique English teaching methodology." (A-117 - A-118.) In addition to ESL instruction, ALCC offers classes in American literature, short-story writing, business English, advanced conversational English, and accent reduction. (A-117.) It also prepares students for the Test of English as a Foreign Language or TOEFL, which is a prerequisite for foreign students applying to most colleges and universities. (A-117.) The school issues ESL certificates to students who complete the prescribed set of coursework. (A-117.) ALCC's teachers are required to possess a bachelor's degree, and to have completed coursework in how to teach ESL or at least one year of experience teaching the subject. (A-116.)

Appellees moved the District Court, Hon. George Daniels presiding, to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Appellant was exempt from the FLSA under the FLSA's "teaching"

exemption. Appellant conceded below, as he does here, that he was employed as a "teacher" within the meaning of the exemption.

In a well-reasoned Memorandum Decision and Order, the lower court held that ALCC was an "educational establishment" under 29 C.F.R. § 541.204(b); thus its ESL teachers, including Appellant, were not subject to the minimum wage and overtime provisions of the FLSA. (A-118.) The court dismissed Appellant's FLSA claims and declined to exercise supplemental jurisdiction over the remaining state-law claims. (A-118 - A-119.)

## SUMMARY OF THE ARGUMENT

The District Court's Memorandum Decision and Order should be affirmed. Appellant's employment with ALCC was exempted from the minimum wage and overtime protections of the FLSA under the teaching exemption.

For this exemption to apply, (1) the employee's "primary duty" must be that of "teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge," and (2) the employee must work for an "educational establishment." 29 C.F.R. § 541.303. Appellant concedes that he meets the exemption's primary duty prong. The only issue at bar is whether ALCC is an "educational establishment."

The language of the FLSA regulations, the applicable case law, and the following undisputed facts in the record all demonstrate that ALCC is indeed such

3

an establishment: ALCC is fully licensed and accredited; it provides formal classes in a traditional classroom setting, including quizzes and exams; it requires teaching experience or training of its teachers; it issues certificates for the completion of programs of coursework, and its stated mission is to improve students' English reading and writing skills.

The teaching exemption is written broadly to encompass a wide variety of educational institutions, including ESL schools such as ALCC. In fact, ALCC satisfies every one of the eight factors that courts apply in determining whether a particular institution falls within the exemption.

The District Court's conclusions below are echoed in another recent case brought in the Southern District by the same Appellant. *See Fernandez v. Zoni Language Centers, Inc.,* No. 15-CV-6066 (PKC), 2016 WL 2903274 (S.D.N.Y. May 18, 2016).[2] There, Judge Kevin Castel determined that a competitor ESL school to ALCC was an "educational establishment" based on the same rationale employed by the District Court in this case. *Id.*

The District Court's judgment here should therefore be affirmed in all respects.

---

[2] The *Fernandez* case is currently pending before this Court and has been assigned Index number 16-1689-cv. Appellant John Volpe is a named appellant in that case.

## STANDARD OF REVIEW

The standard of review of a district court's dismissal of complaint under Federal Rule of Civil Procedure 12(b)(6) is *de novo*. *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). A complaint must contain sufficient facts, accepted as true, to state a clam to relief that is 'plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A legal interpretation of a statute or its accompanying regulations is also reviewed *de novo*. *See Chen*, 798 F.3d at 76.

FLSA exemptions operate as affirmative defenses that may be raised in a Rule 12(b)(6) motion to dismiss if the defense "appears on the face of the complaint." *Chen*, 798 F.3d at 81 (internal quotation marks omitted). FLSA exemptions apply "to those establishments plainly and unmistakably within [the] terms and spirit [of the exemption]." *Id*.

## ARGUMENT

### I. APPELLEE IS EXEMPT UNDER THE FLSA BECAUSE HE WAS A TEACHER EMPLOYED BY AN EDUCATIONAL ESTABLISHMENT.

The FLSA requires that employees be paid minimum wage and time and a half for overtime hours worked unless the employee falls within certain exemptions. *See* 29 U.S.C. § 213(a). Among these exemptions is one for "any employee employed in a bona fide executive, administrative of professional capacity." *See* 29 U.S.C. § 213(a)(1).

5

Under regulations interpreting the FLSA promulgated by the U.S. Department of Education, the term "'employed in a bona fide executive, administrative, or professional capacity . . . also means any employee with a primary duty of teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment . . . ." 29 C.F.R. § 541.303.

Therefore, to determine whether Appellee falls under the teaching exemption, the Court must determine (1) whether Appellee is a teacher, and (2) whether ALCC is an "educational establishment." *Franklin v. Breton Intern., Inc.*, No. 06 Civ. 4877(DLC), 2006 WL 3591949, *2-*3 (S.D.N.Y. Dec. 11, 2006).

Appellee concedes that he is a teacher who engages in the primary duty of teaching. (Appellant Br., pp. 1-2.) The only dispute, therefore, is whether ALCC qualifies as an "educational establishment" as that term is defined in 29 C.F.R. § 541.204(b). The lower court correctly held that it does.

## A. The Terms "Educational Establishment" and "Other Educational Institution" are Construed Broadly.

The FLSA regulations contemplate a broad construction of the term "educational establishment." When applying this term, the operative question for the courts is whether the employer is "essentially a school." *See Escobedo v. Construction Laborers' Educ., Training and Apprenticeship Fund*, No. 11–3653 (ADM), 2012 WL 4838880, *5 (D. Minn. Oct. 11, 2012) (citing *Wilks v. D.C.*, 721

6

F. Supp. 1383 (D.D.C. 1989)). Courts have applied the term "beyond traditional schools" to include such entities as the "educational division of a prison, a non-profit corporation offering continuing education courses for accountants and attorneys, and a tractor trailer driving school." *Astor v. United States,* 79 Fed. Cl. 303, 316 (2007); s*ee Wilks,* 721 F. Supp. at 1386 (Department of Corrections educational program); *Muller v. Amer. Mgmt. Ass'n Int'l,* 368 F.Supp.2d 1166, 1175 (D.Kan.2004) (continuing educational courses); *Gonzales v. New England Tractor Trailer Training Sch.*, 932 F.Supp. 697, 702 (D.Md.1996) (tractor-trailer driving school).

Three broad categories of "educational establishments" are set forth in the regulation: (1) "an elementary or secondary school system," (2) "an institution of higher education," and (3) "other educational institution." 29 C.F.R. § 541.204(b). ALCC falls within this third catch-all category.

As referenced above, courts have interpreted the "other educational institution" category as expansive, an interpretation reinforced by the language and structure of the regulation. For example, section 541.204(b) states that "other education institution" "includes special schools for mentally or physically disabled or gifted children, regardless of any classification of such schools as elementary, secondary or higher." 29 C.F.R. § 541.204(b). It also includes post-secondary career programs that meet certain factors. *Id.* Further, "no distinction is drawn

7

between public and private schools, or between those operated for profit and those that are not for profit." 29 C.F.R. § 541.204(b).

The use of the word "includes" in the regulation, when read in conjunction with the other broad language contained therein, signifies that "special schools for mentally or physically disabled or gifted children" is but one of the many institutions and entities encompassed by the term "other educational institution." *See Fernandez*, 2016 WL 2903274, at *6 (The term is "not limited to 'special schools for mentally or physically disabled or gifted children' and 'post-secondary career programs.'") This language is "illustrative, not exclusive or exhaustive." *Id.*; *see Franklin,* 2006 WL 3591949, at *3 ("An 'educational establishment' at which exempt teaching professionals are employed includes not only 'elementary or secondary school system[s]' and 'institution[s] of higher education,' but also 'other educational institution [s],' *such as* special schools or post-secondary career programs.") (emphasis added). Had the Department of Labor intended to limit "other educational institution," to the few examples enumerated in the regulations, it would have used the word "means," rather than "includes." *Id.* (noting that the regulation employs the term "means" where it intends for a definition to be exclusive, and "includes" where it intends for it to be illustrative).

Further, the breadth of the term "other educational institution," as evidenced by the language of the regulation, is intended to reflect the broad application of the

term "teaching" under the same regulation.  *See Fernandez,* 2016 WL 2903274, at

*7 (citing *Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't*, No.

B–92–1066, 1996 WL 1187049, at *14 (D. Md. Oct. 30, 1996)).

For example, courts have included "instructors 'who do not teach in a

traditional educational institution and do not teach basic education courses'" within

the scope of the FLSA exemption for teachers.  *Id.*; *see also* 29 C.F.R. § 541.303.

Similarly, the Department of Labor ("DOL") has stated that teachers at

kindergarten or nursery schools, gifted and talented programs, automobile driving

schools, home economics programs, as well as vocal or instrumental music

instructors are all properly treated as exempt under the regulations. *See, e.g.*,

Department of Labor Field Operations Handbook, § 22d06 (Rev. 661).

Appellee argues, contrary to the language of the regulation, court decisions,

and the DOL's interpretation, that the regulation is not actually so broad, and that

if the school is not a special school for disabled or gifted children, then the only

further consideration is whether the employer is a post-secondary career program.

(Appellant Brief, p. 13-15.)

Appellant claims this tortured argument is supported by instances where "the

DOL had no evidence that a school was accredited . . . or licensed . . . , [it] advised

that the school was not an educational institution."  *Id.* (citing Wage and Hour

Opinion Letter FLSA 2005-38 (U.S. Dep't of Labor Oct. 13, 2005)).  Not only is

9

this argument undermined by the variety of schools found to qualify as educational establishments as set forth above in case law and the DOL Field Operations Handbook, but it also misquotes the opinion letter upon which it is based. In fact, the DOL concluded that the subject school was not an educational institution because there was "no evidence that the beauty school is so licensed or accredited[3] *or other evidence that the beauty school is an 'educational institution'* as discussed in section 541.204(b)." FLSA 2005-38, at 1. The language of the letter shows unmistakably that the DOL considers "other evidence" and other types of educational institutions in its inquiry, again pointing to a broad, rather than restrictive, application of the regulation.

Appellee's contention that the "other educational institution" is limited solely to "special schools for mentally or physically disabled or gifted children" and "post-secondary career programs" must be rejected, as it is belied by the plain language of the regulation and its broad application by both the courts and the Department of Labor.

Construing the term "other educational institution" to encompass a wide variety of settings where teachers impart knowledge to students is "plainly and unmistakably within the terms and spirit" of the regulations defining an "educational establishment."

---

[3] ALCC, unlike the beauty school that is the subject of the DOL's opinion letter, *is* licensed and accredited. (A-115.)

10

## B.     Defendant is an "Other Educational Institution" Within the Meaning of 29 C.F.R. § 541.204(b).

The District Court below recognized eight factors relevant to the question of whether an employer is an "other educational institution" under 29 C.F.R. § 541.204(b).  After applying those factors to ALCC, the District Court determined that ALCC was indeed such an institution.   The well-reasoned analysis and conclusions of the lower court should be affirmed.

Judge Daniels is not alone in reaching the conclusion that ESL schools like ALCC are educational establishments.  As noted above, this case is the second one that Appellant and his attorneys have brought in the Southern District of New York alleging FLSA violations by Appellant's former ESL school employers.  The other is *Fernandez, et al. v. Zoni Language Centers, Inc., et al.*, Index No. 15-cv-6066 (PKC).  The ESL schools in these actions, ALCC and Zoni Language Centers, Inc., are direct competitors and are identical in all material respects in their nature, mission, and curriculum.  The District Court in *Fernandez* held, as did the District Court below, that the defendant ESL school was an "educational establishment," and that Mr. Volpe was exempt from the protections of the FLSA.  The rationale for the District Court's conclusion in *Fernandez* was virtually identical to that used by the District Court here to reach the same result.

In determining whether the schools were "other educational institution[s]," both District Courts considered a set of eight factors.  (A-114 – A-115); *Fernandez,*

11

2016 WL 2903274, at *7. The first two factors are set forth in section 541.204(b), *viz.* whether the employer is "licensed by a state agency responsible for the state's educational system," and whether the employer is "accredited by a nationally recognized accrediting organization for career schools." *Id.* (citing 29 C.F.R. § 541.204(b)). The remaining six factors are as follows.

> (1) The title being held by the organization's employees, (2) the certifications required of teachers, (3) the formality of the courses, (4) whether the organization grants certificates or degrees, (5) the organization's charter, and (6) the teacher's involvement in organizing, communicating, and delivering the curriculum.

(A-115); *see also Fernandez,* 2016 WL 2903274, at *8; *Escobedo*, 2012 WL 4838880, at *5.

Appellant insists that ALCC must meet "all" of the factors in order to obtain dismissal, but provides no authority for this novel proposition. (Appellant Br., P. 19.) In fact, cases that have applied these factors have found the employer to be an "educational establishment even where all the factors were not met. *See, e.g., Fernandez,* 2016 WL 2903274, at *10 (employer may be an "educational establishment," notwithstanding it does not meet all of the factors); *Escobedo,* 2012 WL 4838880, at *5-*7 (finding employer to be educational establishment despite the fact that the employer was not accredited, and citing other cases that have done the same). Courts routinely find employers who are ***either*** licensed ***or*** accredited or both (as ALCC is), to qualify as covered "educational establishments"

12

within the meaning of the regulations.  *See, e.g., Franklin,* 2006 WL 3591949, at *3-*4; *Bretton v. Compass Career Mgmt. LLC,* No. 13-633*,* 2015 WL 349270 at *5 (E.D.La. Jan 26, 2015); *Gonzalez*, 932 F. Supp. at 701.   The result is the same in administrative determinations by the DOL.  *See* Wage and Hour Opinion Letter, 2008 WL 4906284 at *2; Wage and Hour Opinion Letter, 2006 WL 3406601 at * 2.

Regardless, the Court need not reach this question, because the application of the eight factors to the facts in the record unequivocally demonstrates that ALCC is an "other educational institution," and thus the FLSA wage and overtime provisions do not apply to Appellee's employment.  (A-118.)

### 1.  ALCC is licensed by the New York State Education Department.

It is undisputed that ALCC is, and at all relevant times, has been, licensed by the New York State Education Department.  (A-50.)   The New York State licensure requirements are "extensive," *Fernandez,* No. 15-CV-6066 (PKC), 2016 WL 2903274, at *1, and demonstrate that the licensees clearly act as "educational establishments" within the meaning of the regulations.  For example, for an ESL school to be initially certified, it must submit, *inter alia*: enrollment agreements, curricula, tuition refund policies, educational and administrative policies, mandated disclosures, facilities and equipment standards, revenue statements, and the school's minimum licensing and/or qualification standards of all directors, school

13

agents and teachers. 8 NYCRR § 126.10(j)(2)(i)(b)(1)-(8); *see also Fernandez,* 2016 WL 2903274, at *11.

Appellee does not dispute ALCC's licensure, nor does he dispute that the State's Education Department is the "agency responsible for the state's educational system," as set forth in the regulations. *See* 29 C.F.R. § 541.204(b). The State licensure serves as "strong" evidence that ALCC is an educational institution, particularly given the rigorous qualifying criteria needed to obtain licensure. (*See* A-115); *Fernandez,* 2016 WL 2903274, at *11.

### 2. ALCC is accredited by an accrediting body recognized by the U.S. Department of Education.

ALCC is, and at all relevant times, has been, accredited by the Commission on English Language Program Accreditation, a national accrediting agency recognized by the U.S. Department of Education. (A-52, A-54.) Appellee does not dispute this fact. Indeed, Appellee alleges as much in the first amended complaint. (A-37, ¶ 31.) Accreditation serves as "strong" evidence that ALCC is an "educational establishment." (A-115); *Fernandez,* 2016 WL 2903274, at *11.

### 3. Appellant was a "teacher."

The third factor examines the title being held by the organization's employees. This is also undisputed. First, Appellant refers to himself in the pleadings as an "ESL Teacher." (A-32, ¶¶ 5-7.) Second, as the District Court below noted, ALCC identifies its employees as "teachers," and claims to employ

14

"over ninety active teachers who are highly experienced and dedicated professionals." (A-116); (ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers (last visited November 11, 2016)). [4] Finally, Appellee does not refute or even address this factor. Accordingly, this factor further weighs in favor of finding that ALCC is an educational institution. (*Id.*); *Fernandez,* 2016 WL 2903274, at *8.

### 4. ALCC teachers are required to have a bachelor's degree and training or experience as an ESL teacher.

The fourth factor looks at the qualifications required by ALCC of its teachers. ALCC's teachers must have a bachelor's degree or equivalent, and training or experience as an ESL teacher. The licensing requirements of the New York State Education Department mandate that ALCC's ESL teachers (1) have "a baccalaureate or equivalent degree from an institution licensed or recognized by the department," and (2) "have successfully completed either an English as a second language training program recognized by the department or one year of teaching experience in an English as a second language program." *See* 8 NYCRR §126.19(j)(3)(iii)(a).

---

[4] Appellees respectfully request that this Court take judicial notice of the contents of its website, as the District Court did below. "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 167 (S.D.N.Y.2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n.8 (S.D.N.Y.2006)); *see also* Fed. R. Evid 201(f). Appellant does not dispute the authenticity of these contents. (*See* Appellant Br., *generally*.) The information is publicly available on ALCC's website, and is therefore "capable of accurate and ready determination." *See Wrights Mill*, 127 F.Supp. 3d at 167.

Appellant argues that ALCC does not satisfy this factor because there is no evidence that ALCC actually complied with this requirement, and that, even if ALCC did comply, requiring "merely" a bachelor's degree and training is not enough. Appellant compares ALCC to the institution examined in *Astor v. United States,* 79 Fed. Cl. 303, 317, (Fed. Cl. 2007). He suggests that the requirements imposed on ALCC teachers (*i.e.* that they possess a bachelor's degree and training or experience) is "much less demanding than those in *Astor,* where instructors were required to successfully complete a two-week new instructor training, and to have one year of law enforcement experience." (Appellant Brief, p. 21.) There is, however, no basis to conclude that a bachelor's degree, which typically requires four years of schooling, constitutes less rigorous qualifications than a two-week training module. Likewise, Appellant's contention that "there is no requirement that such degree be in education or in a field related to instruction in English as a second language," is of no moment. In addition to a bachelor's degree, ALCC's teachers must have completed an ESL training program or at least one year as an ESL teacher. 8 NYCRR §126.19(j)(3)(iii)(a).

Appellant's argument that there is no evidence of compliance with these requirements should also be rejected. First, the New York State Education Department has licensed ALCC, which by itself constitutes evidence that ALCC imposes requirements on its teachers necessary to secure and maintain licensing. 8

16

NYCRR § 126.10(j)(2)(i)(b)(1)-(8) (requiring teachers of licensed schools to maintain all necessary qualifications). Moreover, as the lower court noted, ALCC publically represents "that each of its instructors has at least a Bachelor's degree, with many also holding a Master's degree as well." (A-117); (ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers.htm (last visited November 11, 2016)). Moreover, Appellant has, notably, not claimed that *he* did not meet these requirements when he was a teacher at ALCC.

Therefore, this Court should find, as the District Court did, that ALCC also meets this factor. (*See* A-116 - A-117); *Fernandez,* 2016 WL 2903274, at *9.

### 5. ALCC offers formal instructional courses in a classroom setting.

For the fifth factor, courts consider the formality of the courses offered by the school. The ALCC courses "are similar to those offered in traditional schools." (*See* ALCC, *ESL Courses in New York City*, http://www.learnenglish.com/courses.htm (last visited November 11, 2016)). In addition to basic ESL instruction, ALCC offers classes in American literature, short-story writing, business English, advanced conversational English, and accent reduction. (*Id.*) It prepares its students for the Test of English as a Foreign Language or TOEFL, which is a prerequisite for foreign students applying to most colleges and universities. (*Id.*) The school issues ESL certificates to students who complete the prescribed set of coursework. (A-13, ¶ 29.) Like a traditional school,

17

ALCC requires its students to take quizzes and exams to test their knowledge. (*See* A-15, ¶¶ 43, 46.)

These "school-like formalities" are "strong evidence" that ALCC is an "educational institution." (A-117 (citing *Fernandez,* 2016 WL 2903274, at *10) (other citations omitted).)

### 6. ALCC issues certificates to its students.

ALCC also satisfies the sixth factor, which looks at whether the school grants certificates or degrees. ALCC provides students who complete its courses with certificates. (A-13, ¶ 29.)

While these certificates are not the equivalent of a degree, that a school does not offer degrees is not "fatal to a determination that the educational programs . . . constitute and educational institution." *Wilks,* 721 F.Supp. at 1386.

Additionally, many "educational establishments" that the Department of Labor considers properly treated as exempt under the regulations do not issue degrees or licenses, such as kindergarten or nursery schools, gifted and talented programs, automobile driving schools, home economics programs, and vocal or instrumental music instructors. *See* Department of Labor Field Operations Handbook, § 22d06 (Rev. 661).

Appellant argues that this sixth factor should be discounted because these certificates "are not prerequisites to any jobs, professional licenses, or educational

opportunities." (Appellant Br., p. 22.) Appellant fails to articulate why this purported lack of "practical value" affects ALCC's status as an "educational institution." The types and nature of the coursework set forth above that the students must complete in order to receive a certificate demonstrate that the certificates issued by ALCC resemble those issued by more traditional schools. ALCC also disputes the notion that ESL certificates lack "practical value." In fact, there are many occupations that require at least some level of English language proficiency. *See* POPULATION DIVISION, U.S. CENSUS BUREAU, *How Does Ability To Speak English Affect Earnings?* (2005).

Therefore, this factor, too, supports the conclusion that ALCC is an "educational institution." (A-117); (*See* A-115); *Fernandez,* 2016 WL 2903274, at *10.

### 7. ALCC's stated mission is to provide quality English language instruction.

The seventh factor examines the language of the school charter. While the ALCC charter is not in the record, the school's stated "mission is to provide quality English language instruction through a variety of courses to international and local students in a professional and supportive atmosphere utilizing [its] unique English teaching methodology." (ALCC, *Home*, http://www.learnenglish.com/ (last visited November 11, 2016).)

While the Court cannot examine the school's charter in this instance, the record nevertheless makes clear the educational goals and mission of the school. This factor therefore weighs in favor of finding that ALCC is an "educational institution."

### 8. Appellant was involved in organizing, communicating, and delivering ALCC's curriculum.

The eighth and final factor is concerned with the role of the employee in the school's educational activities. Here, it is evident that Appellant was involved in delivering the school curriculum. Appellant admits in his First Amended Complaint that he spent time "preparing for class," "teaching in class," and "preparing quizzes or correcting exams." (A-15, ¶¶ 41, 46.) These allegations satisfy the eighth factor, and lend further support a finding that ALCC is an "educational institution."

As applied, every one of the eight factors militates in favor of finding that ALCC falls within the meaning of the term "other educational institution." Appellant is therefore exempt under the FLSA, and the Court should therefore affirm the findings of the lower court.

**C.    ALCC Is An "Educational Establishment" Because It Is A Licensed And Accredited Post-Secondary Career Program.**

ALCC is an "educational establishment" both because it is an "other educational institution," (see discussion, *supra*), and because it is a licensed and accredited "post-secondary career program."

It is evident from the record that ALCC is a post-secondary career program. ALCC is listed in the U.S. Department of Education's "Database of Accredited *Postsecondary* Institutions and Programs." (A-52 (emphasis added).) Like many similar career programs, ALCC caters to students who have finished their formal secondary education and seek to advance their careers by developing their ability to read and write in English—fundamental skills to virtually any career in the United States.

The New York State Department of Education granted ALCC its license pursuant to section 126.10 of the State regulations, which pertains exclusively to the licensure of "private career schools." *See NYCRR* § 126.10. Though the Department of Education lists additional and different requirements for ESL career schools, those requirements are within the category of "private career schools." *See id.* For example, the licensure requirements specify that $3,000 of an ESL school's license application fee must "accrue to the credit of the proprietary *vocational* school supervision account." *Id.* § 26.10(j)(2)(i)(a) (emphasis added).

21

While FLSA regulations do not define the term "post-secondary career program," the language and structure of the State regulations pertaining to its licensure reflect that ALCC falls within the plain meaning of such a program.

Under 29 C.F.R. § 541.204(b) factors relevant in determining whether a "post-secondary career program" is an educational institution "include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools." 29 C.F.R. § 541.204(b). As set forth above, ALCC is both licensed and accredited. In virtually every case where a post-secondary career program was either licensed *or* accredited or both (as ALCC is), the court found that the school was an educational establishment under the regulatory definition. *See, e.g., Franklin,* 2006 WL 3591949, at *3-4; *Bretton,* 2015 WL 349270 at *5; *Gonzalez,* 932 F. Supp at 701.

Ultimately, this case does not hinge on whether ALCC is a post-secondary career program. As argued in the discussion above, ALCC falls within the broad category of "other educational institution" under 29 C.F.R. § 541.204(b). Nevertheless, ALCC's status as a career program, coupled with its licensure and accreditation, provides yet another basis to conclude that ALCC is an "educational establishment," and that Appellant's employment is exempted from the wage and overtime provisions of the FLSA.

## CONCLUSION

In sum, the District Court properly granted Defendant's Motion to Dismiss the First Amended Complaint. For the foregoing reasons, the judgment of the District Court should be affirmed.

Dated: November 14, 2016

*/s/ Andrew Spurchise*
Andrew Spurchise, Esq.
Sean Malley, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue – 8th Fl.
New York, NY 10022
Tel. (212) 583-9600

*Attorneys for Defendant-Appellee*